You may proceed. Thank you, Your Honor. May it please the Court, Andrew Pincus for Appellant, AT&T. I'd like to reserve three minutes for rebuttal, if I may. I'd like to start where the last argument ended up with EPIC Systems, which I think does set up the legal framework for the issue here. And there the Supreme Court said that the FAA protects pretty absolutely agreements for one-on-one or individualized arbitration. And the Court said that Section 2 can't uphold a state law contract rule that will reshape traditional individualized arbitration. And in our view, that's exactly what the McGill rule does. And I think the fundamental reason for that is that, as McGill itself says, public injunctions are designed to provide relief for people other than the individual who's asserted the claim. McGill says, quoting Brown and Hughes, it's designed to prevent further harm to the public at large rather than to redress or prevent an injury to the plaintiff. Do you disagree with the statement we just heard that an arbitrator may issue a public injunction? An arbitrator may issue a public injunction if the arbitration agreement provides for it. AT&T's— How about the statute that the arbitrator is asked to enforce? Well, this is the same question that was before the Supreme Court in Concepcion. And what the Supreme Court said is even though California state law in the Discover Bank case required that there be a class proceeding— No, no. That's not the same question. My question is, can an arbitrator issue a public injunction? And you said if the arbitration agreement provides for it. Yes. But arbitration agreement only says what may be arbitrated, but there's going to be some underlying right at issue, correct? Yes. There has to be a statutory right to begin with. Right. That's what I— Well, I think that's where I would part company with Your Honor and with the statement        Okay. It's fundamentally different how? The first fundamental difference is that arbitrators can issue public injunctions and that's no different from then the court issuing a public injunction. It's the same basic structure no matter what. You're not adding a great deal of procedural and so on. Well, that's where— Do you disagree with the statement that I heard? I think that's where I would part company with Your Honor and with the statement that Mr. Rubin made. Okay. Yeah. Yeah. Help me with that, please. Because I think it is fundamentally different. The second fundamental difference is it's not about the party before the court. It's about whether there is a risk of future harm to other similarly situated  And in order— Well, I understand that, but I think you just conceded that the arbitrator has the power to issue such an injunction. Well, Your Honor, I guess I'd go back to Concepcion. Arbitrators can oversee class proceedings. If an arbitration agreement says the arbitrator can oversee a class proceeding,      Mr. Rubin made. I think that's where I would part company with Your Honor and with the statement that the court had a different idea in mind. The court said that all of the procedural devices that are going with class actions in a court are different from what happens in arbitration. Are there any procedural things that are substantially different in arbitration compared to a court when we're talking about a public injunction? Well, if I may, Your Honor, I'd like to disagree with your premise and then answer your question. Please, Elio, go ahead. I don't think— You can disagree with everything you like. I think EPIC Systems makes clear that although Concepcion addressed class proceedings because that was before it, that the preemptive effect of the FAA is not limited to class proceedings. It sort of looked at the other side of the coin and said, well, class proceedings certainly are preempted. What's protected is individualized one-on-one determination. So I think the question is, under the FAA and under EPIC Systems, is does the proceeding, does the process that's required to decide to issue and then to oversee a public injunction differ from individualized one-on-one decision adjudication? And I think it does for the reason that you're not just looking at the party who's bringing the case. You're looking at a whole bunch of other parties. And in fact, the only way you get a public injunction is to decide that there's something, a threat of future harm to those other parties. That requires a series of decisions. Are those parties similarly situated to the person bringing the claim? And in our particular case, which involves alleged misrepresentations, there were a whole series of different disclosures, depending on timing and other things. So you have to look at all of those other people to decide whether they have a risk of harm based on the other information that was provided to them. Mr. Pincus, if I can ask you a question, because you did argue in your briefs that demonstrating an entitlement to a public injunction would require class-like evidence. I'm not sure if that's what you're trying to describe right now, but why is that? Why is it enough for public injunctive purposes for an individual to establish that the law was violated, let's say it's false advertising law, and that the violation is ongoing? Well, I think that exactly what has to be two of the things in your question I agree with, that the violation is ongoing. So one of those subsumed within that inquiry, at least for the kind of case that we have, is what were the representations to those other people? Is there an actual risk of harm? And also, in this particular case, is there a risk in the future that people will be given changes in technology and changes in a lot of other things? So that's a whole separate inquiry that has nothing to do with the party, with Mr. McArdle. But let's just, for an example, the question is, you know, you ran this ad on TV and it violated the law and you're still running it. Why do you need evidence of third parties who see the ad to say you're enjoined from running the ad? Because the whole inquiry here is, is there a risk of future harm to other people? What McGill specifies in quite a lot of detail is an injunction that benefits only the plaintiff is not a public injunction. The inquiry on a public injunction is, is there future harm to other people not similarly situated? The California Supreme Court has said in other circumstances. And so that fundamentally changes the inquiry from redressing harm to the individual to what is the situation of all these other people? And in this case, millions of other people who got all kinds of different representations where technology and practices have changed. And that whole set of inquiries would have to be undergone. And then what is the proper relief? Is it a technological fix? Is it a representation? Is it a fix that requires specific disclosures? All of that has to be looked into in order to decide what to do. And then the court in Brownton and Cruz in talking about public injunctions said there also is the future administration problem. That's a big difference from individualized injunctions and something that really is quite incompatible with arbitration. And are you suggesting then that the inquiry for public injunctions is the same for class actions? Well, I think the inquiry has a lot of the question about whether to grant a B2 class which seeks injunctive relief. The question there, of course, would be is there a risk of future harm? You'd need that for injunctive relief. And the inquiry would be what about all of these people? Is there a risk of future harm? California law doesn't require class procedures, but I think it's relevant that the leading treatise rudder and the AAA in their procedures say that class-like procedures would be required to fairly adjudicate the claim. In your position, do you distinguish SACOB? Yes. I was going to turn right to that question. I think SACOB is distinguishable on a number of separate grounds. First of all, as my colleague noted, critical to SACOB was the court's finding in that case that the plaintiff was proceeding as a proxy for the State. There were critical elements. The State was the gatekeeper. The claim couldn't be brought if the State didn't want it to be brought. The State is bound by the decision in a BHAGA case, and the State receives the lion's share of the recovery, 75%. So this case is totally unlike that. None of those characteristics here. This is a totally private action, although it has the term public injunction. The other thing is BHAGA does provide relief for the individual who brings the claim. He's part of the similarly situated people. And here, as I said, the characteristic of public injunctions is that they don't provide the focus is not relief for the person before the court, but for these other people. I think it's relevant, although not dispositive, that SACOB was before the Epic Systems decision. We don't think that SACOB, that anyone has to decide SACOB is wrongly decided in order to rule in our favor in this case, but I think it's relevant that SACOB's focus was comparing BHAGA actions to class actions, and the Supreme Court has made clear that the relevant comparison is, in fact, individualized one-on-one actions to whatever the kind of action or remedy is that's at issue. The other thing that I think is relevant is there's a difference in the focus of the inquiry. As I said, the BHAGA action is an individual saying labor violation, I was subjected to labor violations, and I'm suing for myself and for all the other people who were subjected to the same violations. So the focus there really is proving the plaintiff's case and then a somewhat mechanical analysis of who the other similarly situated people are to get monetary sanctions. It's not injunctive relief, and so it doesn't create the questions about exactly how to fashion relief, that might conflict with other third parties that are seeking relief, because in BHAGA, of course, once one case is decided, those claims are exhausted. In the public injunction context, once one claim is decided, someone else can bring a public injunction in action and say, I didn't really like that, relief isn't good, I don't think I'd like some other kind of relief. So there's a possibility of conflicts, and because it's injunctive relief, there's a possibility that the injunctive relief sought may impact on other third parties who are not in the benefited class. And, in fact, there are cases that we cited in our brief where those third parties have been permitted to intervene to raise those concerns about the potential impact on them. So we think it's a very, very different kettle of fish than the issue before the court in SACOP. What is the effect of the non- in your agreement there's a non-severability clause, is that correct? Yes. And what is the effect of that? Well, we have a disagreement with my friends on the other side of what that is, and we've made the point that we think that the effect should be that the only claim that is severed is the one that is not arbitrable. The district court found to the contrary and said if the non-arbitral if there's a claim that can't be arbitrated, then the whole clause blows up. And we've explained in our briefs why we think that that decision was not a proper interpretation of the contract. Why? I'm having a little trouble understanding. Sure. Maybe I'm having a little trouble buying it and not understanding it, but maybe you can convince me otherwise. Well, I think the key is that the relevant clause starts with a sentence that talks about an individual claim. It says the arbitrator may award declaratory injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. In our view, that sort of sets the stage for what a claim-by-claim application of the provisions that follow that provide that there shall be no arbitration for claims where they aren't individualized. But the district court obviously found to the contrary. If we prevail on our preemption argument, obviously what the clause says is irrelevant because the public injunction claim will be non-arbitrable. Thank you. Do you want to reserve your remaining time? I would. Thank you. May it please the Court. Matt McCrary on behalf of Plaintiff McArdle. I would like to start with the Epic Systems case since that's where my esteemed opposing counsel started. And there's this quote that's been going around about what the Supreme Court says the FAA protects, quote, pretty absolutely. And if you read that section, what the Supreme Court is talking about are terms in an arbitration agreement that specify with whom the parties will conduct the arbitration and the rules under which the arbitration will be conducted. And that's what Epic Systems is talking about, individualized arbitration protecting. And the cases that the Supreme Court cites for that are Italian Colors, Concepcion, and a whole host of other cases that encapsulate what is this concept of individualized arbitration. So in that way, Epic Systems isn't this white knight that AT&T seems to think it is that's going to ride to save it from the SACOB decision, which is a straightforward application for Concepcion, because Epic Systems doesn't announce any new arbitrability law or law with respect to what claims go to arbitration. It's simply a straightforward application of Concepcion to the NLRA. And so here, the McGill rule doesn't interfere with either of the two things that Epic Systems says constitute individualized arbitration. It doesn't specify who you have to arbitrate with. It's still just the parties to the arbitration. A public injunction can be adjudicated based on bilateral, one-on-one arbitration. And, two, it doesn't specify the rules that are going to apply to the arbitration. The parties are still free to select whatever procedures they want to adjudicate a claim for public injunctive relief. And that's the key here, because that's what was driving Concepcion. The due process clause of the Constitution requires you to give notice, an opportunity to opt out when you're going to be binding nonparticipants to that decision. And that is — that concern that drove Concepcion is wholly absent here, just like it was in the Sakab decision. So — Of course, you can't — Mr. Finkus takes a little bit different view of Sakab, and he recognizes that we're bound by Sakab, but he argues that there's a path through that is not — would permit us to adopt his position and not be inconsistent with Sakab. What is your view on that? And, Your Honor, and you see in their briefing that they focus on the QI-TAM-like nature of PEGA, and list that the recovery goes to the State and you have to provide notice to the State. But what's interesting is that all of the distinctions that they raise between PEGA claims and public injunction claims aren't what was driving the Court's analysis in Sakab with respect to preemption under the FAA. What was driving the Court's analysis in Sakab was whether or not State law was going to impose procedures on arbitration that are incompatible with the fundamental nature of arbitration a la concepcion. And so this idea that 75 percent of the recovery is going to the State, that's — from a plaintiff's perspective, it's irrelevant to the preemption analysis. What matters is what did the claims look like? Is due process or any other law requiring us to impose certain requirements on arbitration? And the answer in Sakab was no. And the answer here is likewise, no. And so the analysis, as we laid out in our brief, is virtually identical. And in some ways, I would say that it's even more of the case here, right? Because if you look at footnote 10 of Sakab, there you are actually resolving nonparticipants. These other employees' claims are being resolved, right? And that's binding on nonparticipants. They can no longer bring a PEGA claim because they don't have their own claims, right? But here, as was acknowledged at the very end of the previous argument, we're not binding anyone. Anyone else can still sue to either recover restitution for, you know, the retrospective harm that they suffered or seek some sort of alternative relief, a different public injunction if they think that that's necessary. So because we are not resolving the claims of any nonparty to the arbitration or litigation, there's no need for all of the procedural requirements of class actions or anything else to protect those absentees' due process rights. So if you have three different individual plaintiffs who have been harmed in some way in a consumer context and each have three different individual arbitrations, your view is that the arbitrator in each of those could issue a public injunction and you might have — that would go against, in this case, let's say AT&T, and then that those could potentially be inconsistent, overlapping, or contrary to each other. So I think the resolution to that is however AT&T wants to deal with those claims. For example — But the answer is yes. So — Under your construct, that would be permissible. I think that's right, Your Honor. But the way to avoid any problems with that would be in structuring the arbitration agreement to, say, allow intervention from one case to the other, to allow intervention in an arbitration to — so that all of these different competing injunctions could be sussed out. It doesn't require intervention. State law doesn't require intervention, nor does any other constitutional principle, but they are still free to select that as an option if they want to, to make the administration of a public injunction easier or to prevent competing or inconsistent injunctions. So moving on to the next point was that the concept that this violates the individualized nature of arbitration because it's going to have an effect on nonparties. The injunction is going to benefit members of the general public. But having an effect on third parties is entirely consistent with arbitration as we've seen, for example, in the antitrust context. The entire point of the antitrust context that both this Court and the Supreme Court have said is to protect and preserve competition, not competitors. So in an arbitration, the competitor might be the — the individual participant, but a claim or an injunction under the antitrust statutes that's issued by an arbitrator is ultimately to benefit competition, i.e., the general market and the general public. So the idea that you — that an arbitration has to be laser-focused and consider only evidence pertaining to the individuals in the arbitration or have an effect only on the individuals in the arbitration is inconsistent with claims that we know have to be subject to arbitration. The Supreme Court in Italian color said that antitrust claims are subject to arbitration. RICO claims are another — another set of claims that can have effect beyond just the parties to the arbitration, and those are subject to arbitration. So this — this idea that AT&T is trying to — to graft onto EPIC systems that individualized arbitration means only a laser focus on the parties to the arbitration agreement is simply not — not stated in EPIC systems itself and inconsistent with claims that we know are subject to arbitration. I think I asked this of other counsel, but what would the damages look like here? Is there anything regarding the damages that would affect our analysis here? I don't think so, Your Honor. I don't — I mean, a public injunction is really just an order to stop. And so to — to go back to the — the previous question about competing injunctions, I think that that's — the nature of public injunctive relief is also going to cut against the possibility of competing injunctions because it's essentially just an order — it's a cease-and-desist order. We — you find that — the court or the arbitrator finds that there's an unlawful, unfair, or deceptive practice, right? This individual, whether it's the individual in court or in arbitration, has been — suffered a loss of money or property as a result. So as long as the practice has — as long as the claimant also shows there's a likelihood that the practice is going to continue, you stop the practice. So in that way, the, I think, simple nature of what a public injunction is, stop whatever the illegal conduct is, is going to cut against the idea of — You're saying all you want is follow the law and follow the law injunction. Well, not — not exactly follow the law, but stop doing whatever it is we've alleged is unlawful, right? For here, that would be the international roaming case. Are there ever affirmative public injunctions? There's a negative injunction that says stop. Are there ever any affirmative public injunctions that require affirmative acts by the defendant? I — I'm going to be honest with you. I don't know the specific answer to that question. I suppose if the court determined that it was necessary — I mean, as I heard the argument from your predecessor, the public injunction just says stop. And I understand that that certainly would be some of them. And my question is, is that all of them? I think that's the — the typical public injunction is stop. And particularly, the McGill court referenced deceptive advertising as the, you know, kind of hallmark of a public injunctive case, which is where, as Judge Marguerita said, you know, you're running an ad, it's deceptive, stop running the ad. And that's, I think, the run-of-the-mill type of public injunction. Well, but you often see in a variety of arenas a more affirmative, which is, okay, your ad's been saying this, but you can't say those words, you have to say this. Or it has to encompass this kind of a disclosure, for example, because otherwise it's unfair and misleading or whatever. So would your view apply to the same sort of not just prohibitive injunction, but the affirmative must undertake A, B, and C? So, for example, you know, a phrase is unlawful, but if you added this disclaimer, it would not be unlawful. That's an example. That's a good question. I think that the analysis would be the same. But what if the first arbitrator says stop unless you do X, and the second arbitrator says stop unless you do Y? And the third one just says stop. Well, Your Honor, I suppose that that's the situation that we were talking about earlier, and the remedy to that is to have a, you know, for AT&T to draft its arbitration agreement in a way that takes that into account. So, for example, if there are multiple suits that they can be joined in arbitration or that they can allow intervention in arbitration, or if they wanted to, they can simply litigate those in court. As a practical matter, that sounds good. I mean, it's an abstract, but as a practical matter, you've got this one over here in Iowa, and you've got this one in California, and you've got this one, and this arbitrator says this, and that one says this. So this notion that there can be some cohesive intervention, so to speak, that sort of covers the waterfront doesn't seem like a practical solution to the problem we've presented. Well, and Your Honor, arbitration isn't always practical. And the Supreme Court has actually said that it is highly technical, and that piecemeal, you know, adjudication of varying claims is totally consistent with arbitration. So arbitration, I mean, if you look at the Henry Schein case, which just came out recently, right, the notion that the Court can't simply bypass the arbitration process if the Court believes that arbitration is wholly groundless. We actually have to go through the whole process of the arbitrator deciding arbitrability, maybe even doing the arbitration before it comes back to the Court to say, by the way, this, you know, I don't find that this dispute was arbitrable. That's in some ways a waste of time, but that's the way that arbitration is set up. And, Your Honor, the very last thing that was touched on in the previous argument was this idea of the non-severability clause. And here it's, if you use just plain and simple English, which is what California law says you should use to interpret contracts, if any, if this specific provision, which refers to the entirety of the waiver, which includes public injunctive relief, that provision is found unenforceable, the entirety of this arbitration agreement shall be null and void. That's what it says. I don't think that you could have a more clear non-severability provision, and any other reading is just not reasonable. So with that, we would urge the Court to affirm, unless there are other questions. Thank you. Thank you, Your Honor. Just a couple of points. I think to start with something that my friend said, it's certainly true that there can be individual injunctions that have effects on third parties, but the critical point here, and it's very well spelled out in McGill, is that public injunctions are designed only to have effects on third parties and only, if any effect on the person before the Court, it's incidental. So that necessitates this fundamentally different focus on what kind of relief is appropriate that I discussed before. With respect to what the FAA presents, I'd urge the Court to consider a sort of a hypothetical statute that says State X says we're worried that our — this particular statute isn't being enforced enough. So we're going to say that one person can bring claims on behalf of up to ten other people if they just send them a note and says that's okay. I think if that ten — set of ten claims was brought in arbitration, it would not be individualized, even though there would only be one person who was actually before the arbitrator. He or she would be asserting ten different claims. That wouldn't be individualized, and I think that's the problem that we have here. With respect to the rules, it's true that arbitration gives parties wide leeway in selecting rules, but those rules have to provide a reasonable chance for the claims to be adjudicated. So the problem here is that those rules are going to have to allow, in this particular context, for the obtaining of evidence with respect to the situation of third parties, whether there's a risk of future harm, and what the proper injunctive relief would be. And that's exactly the — Are you saying that that's required under California law?  No, I'm saying that it's probably — it's required. This Court in the Publon against C.H. Robinson case discussed this question, and we don't know what California law requires, although I think it's interesting that a subsequent PAGA decision by the California Supreme Court that we cite in our reply brief did say that at least in court, class discovery — discovery equivalent to class discovery is appropriate for PAGA claims. I'm not saying that's — I'm not saying that that is required, but I think there would be an argument of unconscionability if an arbitration proceeding didn't give the parties a fair chance to obtain the evidence to litigate a public injunction. But if that's so, it may be that our PAGA decision is wrong, and this panel is not in a position to say that it's wrong. I'm not saying that. I'm just bringing — I'm not saying that that's a reason to say — for this panel to say that the PAGA decision is wrong, but I am saying that it — and what the Court said in the Publon case is a reason to recognize that anything doesn't go in terms of rules in arbitration, and that those rules are subject to attack both under the Federal Arbitration Act and under unconscionability principles if they don't provide a fair chance to get the arbitrator to give you access to the information you need. Mr. Pincus, would you agree that procedures for a public injunction are more — are at least relatively more simple than for a PAGA action? I don't think so, Your Honor, because I think the way that PAGA works is the people — the other people whose claims are going to be adjudicated have to be similarly situated to the person before the Court. So it may be that there's a lot of evidence to gather about whether the employer engaged in improper labor practice, but in terms of relief, it's pretty cookie-cutter once you decide that, for example, the overtime applied to this particular job or this particular time was not appropriately taken out of compensation. It's pretty mechanical to say, okay, we're now going to apply that finding to all of the other people. Here, we have this whole other set of people, the people who are argued to be subject to future harm that have to be looked into, and the fact that fashioning injunctive relief is much more complicated than fashioning monetary relief. I realize we're taking over time, but this gets us back to the question of what does the injunction look like. I heard the first panelist, arguer, say, well, it just says stop. That's not very complicated. Pincuster I think that's right, and I'm less familiar with that case, which I understand may have been an overcharge allegation. Here, the claim is misrepresentation. I think an order that said stop misrepresenting could have First Amendment problems and probably not comply with Rule 65's requirements, so I think it would have to be somewhat more specific in terms of what exactly the alleged misrepresentation is and how to remedy it, and we have the additional problem that different people got different representations. I'm not sure that's right. That is to say, once it's established that it's a misrepresentation, and a court and an arbitrator could both say, here's what I find to be misrepresenting. Stop. And, Your Honor, the problem in this case is Mr. McCardle got representations for a specific period. Future harm would involve people who got information from AT&T for another 10 years. All of those representations would have to be looked at to see whether they carried the same risk of deception, if there was one, and how to remedy them. So it's a much more complicated problem. Thank you. Thank you. I'd like to thank counsel for argument in briefing. McCardle v. AT&T Mobility is submitted. The third related case is Tillage v. Loomis v. Comcast.
judges: McKeown, W. Fletcher, Murguia